WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—November, 1884.

SMITH *v.* SMITH.

*In the matter of the estate of* REBECCA WELLS,
*deceased.*

Testatrix, by her will, proved in 1869, gave to her executors $3,000, in trust
to invest and keep invested until M., a female infant, attained majority,
and then to pay to the latter the principal, "with the accumulation of
interest made thereon during her minority, should not the same have
been required for her support and maintenance;" with a disposition
over, in case of the death of M. before arriving at full age. In 1878,
the father of M. was appointed administrator with the will of testatrix
annexed, and received a bond and mortgage for $3,000, representing
the above mentioned bequest to his daughter. .

M. having reached majority, the administrator filed an account which
included claims, as a credit against the trust fund, for board, articles
of dress, etc., furnished to the infant, to an amount which exhausted
the principal and interest, with the exception of about $450. It
appeared that M. was the chief beneficiary in the will of her grand-
father, who died in 1876, with whom she had resided since early
infancy, and whose will made generous provision for her maintenance
and support; and that in 1877, she went to live with her father, and
remained with him until 1882, during which period she received from
her grandfather's estate from $60 to $80 per month; nearly one half of
which, according to her testimony she gave to her father.—

*Held,* that, by the terms of the trust created by the will of testatrix, a dis-
cretion was given as to the application of interest only, and not prin-
cipal, to the infant's maintenance and support; that her receipts from
her grandfather's estate were ample for that purpose, unless squan-
dered, and that it was the father's duty to have taken measures to
prevent any such misapplication by her; that, therefore, the expendi-
ture by him of even the interest of the trust fund was unjustifiable;
and that all the credits, claimed by him against the trust fund, must
be disallowed.

. THE administrator, with the will annexed, became
such in 1878. By her will, proved in October, 1869,

Rebecca Wells, the testatrix, among other things, provided as follows:

"*Eleventh.*—I give and bequeath unto my executors hereinafter named, the sum of three thousand dollars to and for the uses and purposes following, that is to say, to invest and keep the same invested on bond and mortgage on real estate, or in the public funds of the United States or State of New York, whichever may, in their opinion, be most safe and productive, until my dear baby, Mary Rebecca Smith, granddaughter, of my cousin, Henry R. Morgan, shall arrive at lawful age, and then to pay to the said Mary Rebecca the said principal sum of three thousand dollars ($3,000) with the accumulation of interest made thereon during her minority, should not the same have been required for her support and maintenance. And upon the further trust, in case of the decease of said Mary Rebecca before arriving at lawful age, then to pay and divide the same equally to and among her children living at the time of her decease, and, in case of the decease of the said Mary Rebecca before arriving at lawful age without leaving issue her surviving, then to pay the same to Benjamin R. Morgan, son of the said Henry R. Morgan."

The administrator was the father of said Mary R. Smith.  On May 20th, 1878, he received from the executors of Henry R. Morgan, who had died in 1876, a bond and mortgage for $3,000 and interest from February 1st, 1876, as representing the amount so bequeathed by Rebecca Wells.  At the time of Mr. Morgan's death, Mary R. Smith was about thirteen years old, and had lived with him from early infancy,

her mother having died shortly after her birth.   In the winter of 1876–7, she was away at school, and in February of the latter year she went to reside with her father, and continued to live with him, with the exception of about five months, until January, 1882, when she left permanently.

Henry R. Morgan, the grandfather of Mary R. Smith, left a last will and testament, in and by which she was made the chief beneficiary of his estate, and wherein provision was made for her education, maintenance and support.   The executor of Mr. Morgan's will paid her school bills, and after she left school and down to the time she became sixteen years old (February 26th, 1879), he paid to her $66.66 per month, and after that period $80 per month, for her maintenance and support.

The administrator, in his account filed herein, claimed a credit, as against the fund and interest, of $478.49, for articles of dress, etc., purchased by him for his daughter, between August 14th, 1876, and February 22d, 1878, before he became administrator; and $72, paid for piano rent thereafter.   He also claimed a credit, for her board from August 15th, 1876, to December 15th, 1880, at the rate of $10 per week, in the sum of $2,250; and also, for like board from May 1st, 1881, to January 23rd, 1883, at $9 per week, in the sum of. $342.   The account, as filed, showed the whole fund exhausted with the exception of $451.   Objections to the account were filed.

G. M. MACKELLAR, *for contestant:*

Cited Wood v. Wood (5 *Paige*, 596); Matter of

Davison (6 *id.*, 136); Matter of Ryder (11 *id.*, 185); Matter of Turner (10 *Barb.*, 552); Perry on Trusts, §§ 616, 617, 618; Walker v. Wetherell (6 *Vesey*, 474); Matter of Bostwick (4 *Johns. Ch.*, 100; Lee v. Brown (4 *Vesey, Jr.*, 362); Errat v. Barlow (14 *id.*, 202).

· A. B. CHALMERS, *for administrator.*

THE SURROGATE.—The contestant resided with Henry R. Morgan, her grandfather, almost from the period of her birth until his death, when she was about thirteen years old. Hence, he stood *in loco parentis* to her, and the provisions in his will for her support became operative at once. She received, or was entitled to have applied to her support, etc., about $800 per year, from the time of his death until she attained to the age of sixteen, and from that time forward nearly $1,000 per year. These sums were amply sufficient for her proper maintenance, education and support; and yet, while she was receiving the former sum, the administrator, her father, claims for past maintenance, etc., before he was entitled to receive the fund in controversy, a sum nearly equal to one half of the amount of the original fund. It is true that, in some cases, an allowance for past maintenance will be granted. Admitting the element of the father's inability, I cannot regard this as such a case, for the simple reason that the daughter had ample means for a generous support, had they been properly applied to that purpose. If they were not, the father neglected his duty as parent in not seeing that it was done. The daughter had no general guardian, and

he was her natural one. Mr. Wells, the executor of Mr. Morgan's will, whose duty it was to apply this money to its destined purpose, seems to have considered that he discharged it by simply handing the money to her in order to pay her bills; while she testifies that a large portion of her annuity went into her father's hands, to relieve his pressing needs. At all events, if she, a young girl of from fifteen to eighteen years, squandered or misapplied the money, of which, by the way, there is no evidence, then, clearly, it was her father's duty to have taken such measures as were within his reach to have prevented it. If she did not squander it, there was an abundance for her comfortable maintenance; if she did squander it, the fault is his. No case, therefore, is established for an allowance for past maintenance, even if this court had the power, under the circumstances, to award it. But the whole matter depends upon other considerations.

This sum of $3,000 was bequeathed to the executors, in trust, to invest and keep invested until the contestant became twenty-one, and then to pay it to her, with the accumulated interest made during her minority, should not the same have been required for her support and maintenance. The case has been argued upon the assumption that the provision, as to what might be required for support, has reference only to the interest on the fund. This I deem a correct interpretation of the clause. The executors, then, were clothed with a discretion as to the application of the interest. Then, in case she died under twenty-one, without issue, they were directed to pay

it to Benjamin R. Morgan. She is now of age and is, consequently, entitled to whatever of the fund and interest legally remains. Neither the executors, nor the administrator who succeeds them, had any right to use a dollar of the sum bequeathed, for the support of the minor, nor of the interest, unless it was required for that purpose. That they could not so encroach upon the principal, is too well settled by numerous well adjudged cases, to warrant a discussion here of the reasons upon which the rule rests. In Deen v. Cozzens (7 *Robt.*, 178), it was held, upon the authority of Matter of Davison (6 *Paige*, 136), and Matter of Ryder (11 *id.*, 185), that, where a fund or estate is given to an infant, with a valid limitation over upon the death of such infant, the court has no power to break in on the *corpus* of the gift, for the support, maintenance or advancement of the infant; and that, where it has no such authority, it has no right to ratify the act of the trustee in so doing. If, however, the minor, after coming of age, ratify such breaking in upon the fund, it shall conclude him (Lee v. Brown, 4 *Vesey, Jr.*, 362). In the case just cited, the testatrix gave £100 in trust to her executors, to place it at interest during the minority of her great nephew, John Lee, and to apply the interest toward his maintenance and education, and when he should attain the age of twenty-one, then to pay the £300 to him ; but in case he should die before that, then the same was given to his brothers and sisters, equally. He attained the age of twenty-one, and subsequently brought an action to recover the £100. It was claimed, in defense, that much more than the

interest of the legacy had been expended in maintaining and educating him at school; and it was also claimed that the legacy was satisfied. The court, however, assuming that the legacy had all been expended for the benefit of the legatee, nevertheless, gave judgment in his favor, declaring that it found no evidence of his having, after he became of age, ratified such expenditure of it. It is not pretended that any such ratification was made in this case. The authorities cited preclude the possibility of my awarding to the administrator any portion of the *corpus* of the fund he claims to have used or applied for the benefit of the legatee. As to whether he did actually so employ or apply any of it, or not, it is unnecessary to examine or discuss.

The only remaining question to be considered is whether, under the circumstances, the administrator, in the exercise of a sound discretion, was justified in using for like purposes, and other than for expenses of administration, any part of the interest of the fund. The language of the testatrix is that the accumulated interest should be paid to her "should not the same have been *required* for her support and maintenance." In view of the fact that, during the period when it might otherwise have been required for such purposes, she was receiving $80, per month, on those very accounts, from the estate of Henry R. Morgan, nearly half of which, according to her testimony, she gave to her father, no good reason is discovered why any allowance should be made to the administrator therefor. The claim is for board at an exorbitant rate, considering the relation of the parties;

he was well aware of the sum she received monthly; and must have known that none of the interest of the fund in question, could, in any reasonable or discreet manner, be "required" to pay it.

The conclusion reached, therefore, is that all of the administrator's claims are disallowed, except that for the expenses of administration, amounting to $247.95. Of course, as a matter between father and daughter, the latter will consult her own sense of filial duty in exacting or forbearing to exact the whole amount to which she is thus adjudged to be legally entitled.

No costs of this proceeding are allowed to the administrator, he being already allowed $75, therefor in the above sum of $247.95. Under the circumstances, I think the contestant's costs, including stenographer's fees, so far as unpaid, should come out of the fund.